IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JULIE A. DOWNEY and
JAMES D. DOWNEY,

    Plaintiffs,

vs.                                       Civ. No. 11-587 MCA/ACT

AMERICAN NATIONAL PROPERTY AND
CASUALTY COMPANY, and AMERICAN
NATIONAL GENERAL INSURANCE
COMPANY and Subsidiaries,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Compel Response to Plaintiffs' First Set of Interrogatories and Requests for Production to Defendant American National Property and Casualty Company and American National General Insurance Company [Doc. 73] filed January 10, 2013 ("Motion to Compel"). The Defendants filed their Response [Doc. 75] on January 28, 2013 ("Response"), and the Plaintiffs filed their Reply [Doc. 76] on February 6, 2013 ("Reply"). A Notice of Completion of Briefing [Doc. 77] was filed on February 6, 2013.

## FAILURE TO COMPLY WITH LOCAL RULES

Plaintiffs' Motion is in violation of D.N.M.LR-Civ. 37.1. Local Rule 37.1 requires that a party seeking relief pursuant to Rule 37(a) "must attach to the motion a copy of (a) the interrogatory, request for production or inspection, relevant portion of deposition transcript, or request for admission; and (b) the response or objection thereto." Although Plaintiffs indicate that Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories and First

Requests for Production of Documents to Defendant ANPAC are attached to their Motion as Exhibit A, Plaintiffs failed to attach a copy of the disputed interrogatories and the objections made by the Defendants.

## **PROCEDURAL AND FACTUAL BACKGROUND**

On May 27, 2011, Julie A. Downey and James D. Downey ("Plaintiffs") filed their Verified Complaint for Declaratory Relief in the First Judicial District Court, Santa Fe County, New Mexico. [Doc. 1-1.] Plaintiffs named as Defendants American National Property and Casualty Company, American National General Insurance Company[1] and Dennis Rossi[2] (collectively "ANPAC"). On July 1, 2011, Defendants filed a Notice of Removal[3] [Doc. 1] based upon the Class Action Fairness Act "CAFA" pursuant to 28 U.S.C. § 1332(d) and, alternatively, the diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332(a)." [Id. at 2.]

> Plaintiffs are seeking certification and relief on behalf of the following class:
>
> All New Mexico policyholders to whom ANPAC issued an MFRA/UM policy or renewal policy which was in force on or after December 12, 1990, where such policy or renewal policy provided less than equal limits UM coverage and ANPAC did not obtain a written rejection of the equal limits coverage in a form which also notified the policyholder of the premium prices for each limit of UM coverage available to them under the UM statute.

---

[1] Defendants American National Property and Casualty Company and American National General Insurance Company filed a Motion to Dismiss [Doc. 12] on July 8, 2011. By Memorandum Opinion and Order [Doc. No. 36] dated March 31, 2012, their Motion to Dismiss was denied. Defendants filed a Motion for Reconsideration on their Motion to Dismiss [Doc. 39] on May 8, 2012, which is currently pending before the Court.

[2] Defendant Rossi filed a Motion to Dismiss [Doc. 13] on July 8, 2011. By Memorandum Opinion and Order [Doc. 36] dated March 31, 2012, Dennis Rossi's Motion to Dismiss was granted.

[3] Plaintiffs filed a Motion to Remand [Doc. 15] on July 29, 2011. By Memorandum Opinion and Order [Doc. 36] dated March 31, 2012, Plaintiffs' Motion to Remand was denied.

On behalf of the class, Plaintiffs are seeking retroactive reformation to provide equal limits UM coverage due to ANPAC's failure to obtain a valid written rejection of the equal limits UM coverage as required under NMSA 1978, § 66-5-301, NMAC § 13.12.3.9, and the New Mexico Supreme Court's holding in *Jordan v. Allstate*, 2010-NMSC-051, 245 P.3d 1214, 149 N.M. 162. [Doc. 73 at 2.] Plaintiffs also seek notification to every New Mexico policyholder to whom ANPAC issued or renewed a policy with less than equal limits UM coverage informing them of the retroactive reformation to provide equal limits UM coverage. [Id.]

In their Motion to Compel, Plaintiffs seek answers and responses to Interrogatory Nos. 1, 2, 3 and 4, and Request for Production No. 1. In both ANPAC's Response and Plaintiffs' Reply, the parties agree that the discovery disputes with regard to Interrogatory Nos. 3 and 4 and Request for Production No. 1 have been resolved. Thus, the only outstanding disagreements are with respect to Interrogatory Nos. 1 and 2. [Doc. No. 75 at 1; Doc. No. 76 at 1.]

Interrogatory Nos. 1 and 2 seek information on (1) the total number of motor vehicle insurance policies issued by ANPAC in New Mexico since May 20, 2004; (2) the number of cars insured under these policies; (3) the policy numbers; (4) and the names and addresses of the policy holders. [Doc. 73 at 3.] Plaintiffs argue that this information is necessary for class certification, specifically because it is their burden to provide "that the class is so *numerous* that joinder of all members is impracticable." [Id. at 4-5.] (Emphasis added.) Plaintiffs assert that:

> As the putative class is composed of persons to whom ANPAC sold motor vehicle policies in New Mexico during the relevant time period, the identity of these persons (and the number of policies they were sold as well as the number of vehicles insured under each policy) is clearly relevant for purposes of class certification.

3

[Id. at 5.] Plaintiffs cite to *Barr-Rhoderick v. Board of Education*, 2006 U.S. Dist. LEXIS 72527 (D.N.M. April 11, 2006) to support their argument that this Court should order the production of information identifying putative class members prior to class certification.

ANPAC objects to Plaintiffs' Interrogatory Nos. 1 and 2 stating that this information is "irrelevant, has no nexus to the claims or events at issue in this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence." [Doc. 75 at 3.] Generally, ANPAC argues that the information is irrelevant because the claim alleged in Plaintiffs' Complaint is that the ANPAC's UM selection/rejection forms did not comply with *Jordan*, and as such seek certification of a class of New Mexico policyholders whose policies "provided less than equal limits UM coverage and ANPAC did not obtain a written rejection of the equal limits coverage in a form which also notified the policyholder of the premium prices for each limit of UM coverage available to them under the UM statute." [Doc. 75 at 2; quoting Doc. 1-1, Prayer for Relief ¶ A.] To the extent Plaintiffs seek information not limited to policies with unequal limits, ANPAC objects that the information sought is overbroad and contends that information regarding *all* policies issued by ANPAC since May 20, 2004, and *every* named insured on those policies is irrelevant to a proposed class that is limited to insureds who were issued policies with unequal limits. [Doc. 75 at 3.]

More specifically, ANPAC asserts that the information Plaintiffs seek in Interrogatory Nos. 1 and 2 is not necessary for class certification because if the proposed class were to be certified, the numerosity prong is not disputed. ANPAC points to a declaration by Gary Horsman[4] submitted in support of ANPAC's Notice of Removal in which he declares that

---

[4] Mr. Horsman is employed as a Management Systems Consultant by American National Property and Casualty Insurance Company. The facts set out in his Declaration are within his personal knowledge and

"ANPAC had approximately 3,904 policies in force with unequal limits and '[m]any more policies in force in prior years also had [unequal limits].'" [Doc. 75 at 4; quoting G. Horsman Decl. Doc. 1-3.] ANPAC argues that Mr. Horsman's declaration is more than adequate to establish that Plaintiffs' proposed class is sufficiently numerous. [Doc. 75 at 4.] In addition, ANPAC contends that Plaintiffs' reliance on *Barr-Rhoderick v. The Board of Education of Albuquerque Public Schools* to support precertification discovery of putative class members is misplaced because the names and addresses of putative class members were not ordered until *after* the class had been certified. [Doc. 75 at 4-5.]

Finally, ANPAC asserts that Interrogatory No. 1 "improperly seeks confidential and private information regarding ANPAC customers who are not defendants in this lawsuit and have a reasonable expectation that such confidential information will be protected from unwarranted disclosure." [Id.] ANPAC argues that pursuant to N.M. Admin. Code § 13.1.1 *et seq.*, they are required to protect their policyholders' nonpublic information, and that if this information were to be disclosed at this point in the litigation, Plaintiffs will use the information to contact ANPAC's policyholders prior to any class being certified. [Id. at 5-6.]

In their Reply, Plaintiffs argue that ANPAC's conceding numerosity "cannot limit Plaintiffs' access to relevant discovery." [Doc. 76 at 2.] Plaintiffs further contend they "have the right to discover relevant information and are not limited to a parties' characterization or summation of this information." [Id.] As to disclosing private information prior to class certification, Plaintiffs argue it is within the discretion of the Court to permit discovery on any relevant matter and that Plaintiffs have offered to stipulate to an appropriate protective order

---

experience, or are based on ANPAC's institutional knowledge that he has reviewed and confirmed. [Doc. 1-3.]

addressing any confidential or private information. [Id.] Finally, Plaintiffs argue that the ANPAC has misread *Bahr-Rhoderick* because the Court allowed the disclosure of some putative class members *before* the class was certified. [Id. at 3.] Plaintiffs ask this Court to order ANPAC to fully respond to Interrogatory Nos. 1 and 2 of Plaintiffs' First Set of Interrogatories.

## RELEVANT LAW

### A.   Scope and Relevance of Discovery

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Federal courts have held that the scope of discovery under Rule 26 is deliberately broad. "The way is now clear, consistent with recognized privileges, for the parties obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1974); *see Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Sanchez v. Matt*, 229 F.R.D. 649, 654 (D.N.M. 2004 (Browning, J.) ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").

A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *McGee v. Hayes*, 43 Fed.Appx. 214, 217 (10th Cir. 2002)(unpublished). *See Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023, at *2 (S.D.N.Y. 2002) (Knapp, J.) ("Discovery, however, is not intended to be a fishing expedition, bur rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.")(citation omitted)). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both

plaintiff and defendant." *Gomez v. Martin Marietta Corp*., 50 F.3d at 1520. The court may forbid the disclosure of discovery, specify terms for the disclosure of discovery, forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters to protect a party from undue burden and expense. Fed. R. Civ. P. 26(c)(1).

Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, the "object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Electronics Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181, at *2 (N.D.Ill. 1998)(quoting *Piacenti v. General Motors Corp*., 173 F.R.D. 221, 223 (N.D.Ill. 1997)). Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id*. Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.*

Rule 26 was amended in 2000 to state that the material requested must be "relevant to the claim or defense of any party," and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). The Advisory Committee explained that the amendment was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment (stating that the amendment was made with the intent "that the parties and the court focus on the actual claims and defenses involved in the action"). The Advisory Committee further explained:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses,

> and if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment.

### B. Interrogatories and Requests for Production

Rule 33 requires a party to answer an interrogatory "separately and fully . . ., unless it is objected to, in which event the objecting party . . . shall answer to the extent the interrogatory is not objectionable." Fed. R. Civ. P. 33(b)(1). Likewise, Rule 34 requires a party on whom a request for production is served to "state . . . that inspection and related activities will be permitted as requested, unless the request is objected to . . . . If an objection is made to part of an item or category, that part shall be specified and inspection permitted of the remaining parts." Fed. R. Civ. P. 34(b). Rule 33 also provides: "all grounds for an objection to an interrogatory shall be stated with specificity." Fed. R. Civ. P. 33(b)(4). "The burden is on the objecting party to show why an interrogatory is improper." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2173, at 291-92. The objecting party is required to "show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 519 (D.Kan. 2010)(quoting *Allianz Ins. Co. v. Surface Specialities, Inc*., 2005 WL 44534, at *2 (D.Kan. Jan. 7, 2005)(unpublished opinion).

### C. Rule 23 Class Certification Requirements and Discovery Related Thereto

At this stage of the case, the issue is whether the proposed discovery is relevant to class certification. *In re Urethane Antitrust Litigation,* 2006 WL 2620347 (D.Kan. Aug. 26, 2006). Notably, discovery on class certification is not a matter of ascertaining whether plaintiff will

prevail on the merits, but whether the moving party can establish the discovery is pertinent to Fed. R. Civ. P. 23 class certification requirements. A consideration of the merits, to a certain extent, is inextricably intertwined with the Rule 23 requirements of commonality and typicality. *Id.* The recognized need for pre-certification discovery is subject to limitations which may be imposed by the court, and any such limitations are within the sound discretion of the court. *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 304-305 (D.Colo. 1998). "The discovery which is permitted should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad that the discovery efforts presented an undue burden to the defendant. Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification." *Id.*

Rule 23 provides the requirements for certifying a class under the federal rules. All classes must satisfy the prerequisites under Rule 23(a). Additionally, a class must satisfy one of the three sets of requirements under Rule 23(b). The plaintiff bears the burden of showing that the requirements are met. *See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988)("A party seeking to certify a class is required to show ... that all the requirements of [Rule 23(a) ] are clearly met."). *See also Shook v. El Paso County*, 386 F.3d 963, 968 (10th Cir.2004)("Although the party seeking to certify a class bears the burden of proving that all the requirements of Rule 23 are met, the district court must engage in its own 'rigorous analysis' of whether 'the prerequisites of Rule 23(a) have been satisfied.' ")(quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), and citing *Reed v. Bowen*, 849 F.2d at 1309)). The Court must accept a plaintiff's substantive allegations as true, but it "need not blindly rely on conclusory allegations which parrot Rule 23," and "may consider the legal and

factual issues presented by plaintiff's complaints." *Shook v. El Paso County*, 386 F.3d at 968 (citing *J.B. v. Valdez*, 186 F.3d 1280, 1290 n. 7 (10th Cir.1999); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). *See Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir.2000)("Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues."). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982). *See Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir.2009)("We, of course, adhere to the principle that class certification does not depend on the merits of a suit.").

### 1.   Class Prerequisites

All classes must satisfy the prerequisites under rule 23(a):

> (a)  Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1)  the class is so numerous that joinder of all members is impracticable;
> >
> > (2)  there are questions of law or fact common to the class;
> >
> > (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

## 2. **<u>Numerosity</u>**

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable. Some courts have held that numerosity may be presumed at a certain number; the United States Court of Appeals for the Tenth Circuit, however, "has never adopted such a presumption." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir.2006). The Tenth Circuit has stated that there is "no set formula" to determine whether the numerosity requirement is met; instead, it is a fact-specific inquiry best left to the district court's discretion. *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir.1978). *Cf. Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir.1999)(finding that proposed class consisting of "100 to 150 members ... is within the range that generally satisfies the numerosity requirement"). In determining whether a proposed class meets the numerosity requirement, "the exact number of potential members need not be shown," and a court "may make 'common sense assumptions' to support a finding that joinder would be impracticable." *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D.Colo.2002) (citation omitted). *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n. 1 (6th Cir.1997)(noting that rule 23(a)(1) is not a " 'strict numerical test' "; holding, however, that, where class comprises over 1,100 persons, suggestion that joinder is not impractical is "frivolous") (citation omitted); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993)("[T]he difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable." (citing 1 Herbert B. Newberg, Newberg on Class Actions § 3.05, at 141–42 (2d ed. 1985))). "Satisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required." *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 384 (D.Colo.1993). *See*

*Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993)("Impracticable does not mean impossible.").

"Determining whether the proposed class is sufficiently numerous for certification is usually straightforward.  Affidavits, declarations, or even reasonable estimates in briefs are often sufficient to establish the approximate size of the class and whether joinder might be practice and management alternative to class litigation."  MANUAL FOR COMPLEX LITIGATION (4th) § 21.141).

## DISCUSSION

Here, the only specific ground for relevancy set forth in Plaintiffs' Motion to Compel in seeking the information requested in Interrogatory Nos. 1 and 2 is to establish the numerosity prong of Rule 23(a).  That said, Plaintiffs also contend that they "have the right to discover relevant information and are not limited to a parties' characterization or summation of [] information."  At this stage of the litigation, however, Plaintiffs are entitled to information that is relevant to class certification.  Thus, the essential question before the Court is whether the ANPAC policy information requested by Plaintiffs identifying the (1) the total number of motor vehicle insurance policies issued by ANPAC in New Mexico since May 20, 2004; (2) the number of cars insured under these policies; (3) the policy numbers; and (4) and the names and addresses of the policy holders putative class members is necessary for Plaintiffs to meet their burden of proof under the numerosity requirement of Rule 23(a).

In its Notice of Removal, ANPAC states as follows:

    B.    The Proposed Class Has At Least 100 Members.

        . . .

> 17. ANPAC estimates that it currently (as of June 5, 2011) has approximately 3,904 policies in effect where the UM/UIM-BI coverage limits stated on the declarations page are less than the corresponding BI limits.
>
> 18. Therefore, the putative class exceeds the minimal requirement of 100 putative members.

[Doc. No. 1 at 5, Horsman Decl. (Ex. B) ¶ 4.] ANPAC concedes numerosity. In addition to this very specific number represented in Mr. Horsman's Declaration, Mr. Horsman adds that "[m]any more policies in force in prior years also had [unequal limits]." [Id.] In light of this information, Plaintiffs have failed to explain with any specificity how the policy information they are requesting supports or negates the prerequisites for the numerosity requirement of class certification. Furthermore, Plaintiffs have not presented any evidence as to why the information presented in Mr. Horsman's Declaration is either insufficient or unreliable. While the Tenth Circuit has stated that there is "no set formula" to determine whether the numerosity requirement is met, the Court may make common sense assumptions to support that joinder would be impracticable. Here, where the class is represented as comprising at least 3,904 members, to suggest that joinder is not impractical would be frivolous. *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n. 1 (6th Cir.1997). Thus, the numerosity of the class membership here is sufficiently large to warrant a class action because the alternative of joinder is impracticable.

While both parties argue that *Barr-Rhoderick* supports their respective positions to allow or not allow precertification discovery of putative class member information, the facts in *Barr-Rhoderick* are distinguishable and thus inapplicable to the case here. *Barr-Rhoderick* involved claims against Albuquerque Public Schools for alleged violations of the Individuals with Disabilities Education Act (IDEA) that occurred in its "intensive support programs" or "behavior intervention programs." *Barr-Rhoderick v. Board of Education of Albuquerque Public Schools*,

2006 U.S. Dist. LEXIS 72527, *4 (D.N.M. April 11, 2006).  Specifically, plaintiff claimed that students enrolled in these programs were adversely affected by a school policy or custom of reducing hours of school attendance for certain categories of students with disabilities.  *Id.*  In that case, the information necessary for determining members of the class for purposes of precertification numerosity was anything but straightforward, as it is here.  In *Barr-Rhoderick*, there were issues involving current and past enrolled students, statute of limitations concerns, exhaustion of administrative remedies, and the need to distinguish students with disabilities whose days were shortened based on systemic, school-wide policies from those whose days were shortened based on individualized education programs.  *Id.* at *7.  There were also issues regarding parents' privacy and consent rights in the face of ascertaining information about minors and the prospect of not obtaining consent.  *Id.*  Thus, while the defendants in that case had estimated there were approximately 460 currently enrolled class members,  the plaintiffs were allowed to review individualized education programs prior to certification to confirm that estimate in the face of all the variables presented.  *Id.* at *8.  Here, there are no such variables at issue.

## ATTORNEY FEES

Plaintiffs' request that they be awarded attorney fees incurred in presenting their Motion to Compel is denied.  Reasonable expenses are to be awarded when a motion to compel discovery is granted or if the requested discovery is provided after the filing of the motion, unless the court finds that the motion was filed without the movant making a good faith effort to obtain the discovery, or that the opposing party's nondisclosure was substantially justified, or that other circumstances make the award of expenses unjust.  Fed. R. Civ. P. 38(a)(5)(A).  Here,

Plaintiffs' Motion to Compel Answers to Interrogatory Nos. 1 and 2 is not granted and the opposing party's nondisclosure was substantially justified.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel Response to Plaintiffs' Interrogatory Nos. 1 and 2 of its First Set of Interrogatories and Requests for Production to Defendant American National Property and Casualty Company and American National General Insurance Company is **DENIED**.

**IT IS SO ORDERED.**

_____
**ALAN C. TORGERSON**
**United States Magistrate Judge**