IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JULIE A. DOWNEY AND JAMES D.
DOWNEY,

      Plaintiffs,

    vs.                                  No. 1:11-CV-00587-MCA-KBM

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY,
AMERICAN NATIONAL GENERAL
INSURANCE COMPANY, and
DENNIS ROSSI,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Motion for Reconsideration of Order Denying ANPAC's Motion to Dismiss*. [Doc. 39]  Having considered the submissions, the relevant case law, and otherwise being fully advised in the premises, the Court grants ANPAC's motion for reconsideration, grants the *Motion to Dismiss Plaintiffs' Claims Against Defendants American National Property and Casualty Company and American National General Insurance Company* and dismisses Plaintiffs' *Verified Complaint for Declaratory Relief* without prejudice.

**I.     BACKGROUND**

The complex background of this case was detailed in the Court's *Memorandum Opinion and Order*, dated March 31, 2012. [Doc. 36] Below is a brief summary of the pertinent facts, as they pertain to the pending motion.

On May 27, 2011, Plaintiffs Julie A. Downey and James D. Downey filed their *Verified Complaint for Declaratory Relief* [Doc. 1-1] against Defendants American National Property and Casualty Company and American National General Insurance Company (collectively, hereinafter referred to as "ANPAC"), as well as Defendant Dennis Rossi, a licensed New Mexico agent and broker for ANPAC, in the First Judicial District of the State of New Mexico.  The *Complaint* alleged that Mrs. Downey "was involved in a violent motor vehicle accident" caused by an underinsured motorist on February 8, 2007. [Doc. 1-1 at 9-10]  Although Plaintiffs had rejected uninsured/underinsured motorist (UM) coverage in an amount equal to their bodily injury and property damage liability limits, the *Complaint* alleged that this rejection was "void and ineffective" under the New Mexico Motorists Statute, NMSA 1978, § 66-5-301 and recent New Mexico Supreme Court opinions.  [Doc. 1-1 at 12; Doc. 1-2 at 15] Accordingly, Plaintiffs sought declaratory relief on behalf of themselves, and a class of similarly situated individuals, including:

> All New Mexico policyholders to whom ANPAC issued an [Mandatory Financial Responsibility (MFRA)]/UM policy or renewal policy which was in force on or after December 12, 1990, where such policy or renewal policy provided less than equal limits UM coverage and ANPAC did not obtain a written rejection of the equal limits UM coverage in a form which

      also notified the policyholder of the premium prices for each limit of UM coverage available to them under the UM statute.

[Doc. 1-1 at 13] ANPAC removed the case to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). [See Doc. 1]

      On July 8, 2011, ANPAC filed a *Motion to Dismiss Plaintiffs' Claims Against Defendants American National Property and Casualty Company and American National General Insurance Company* [Doc. 12] for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Specifically, ANPAC contended that Plaintiffs' *Complaint* "presents no 'actual controversy'" because it does not "allege that ANPAC refused to reform [Plaintiffs'] policy" in accordance with Jordan nor does it allege that Plaintiffs "have a UM/UIM claim under their ANPAC Policy that ANPAC refused to handle consistent with Jordan." [Doc. 12 at 2]. Plaintiffs responded that an actual controversy and an injury-in-fact existed in this case because ANPAC had sold Plaintiffs an insurance policy that violated New Mexico law, Plaintiffs were damaged by the inadequate insurance policy, and a favorable decision will redress the harm in the form of actual damages for the Downeys and notice to the class members regarding their rights under New Mexico law. [Doc. 25 at 3; Doc. 24 at 5]

3

On March 31, 2012, this Court filed a *Memorandum Opinion and Order* denying, in relevant part, ANPAC's motion to dismiss.[1] [See Doc. 36] The Court explained its holding as follows:

> Turning to the facts of this case, the Court concludes that a case or controversy existed at the time Plaintiffs filed their complaint. According to Plaintiffs' complaint, Mrs. Downey was involved in a violent motor vehicle accident on February 8, 2007 with an underinsured motorist. [Doc. 1-1 at 10-11] "Mrs. Downey suffered serious permanent injuries to her temporomandibular joints, namely, chronic bilateral, cervico-facial pain dysfunction [MPD Syndrome], and bilateral, temporomandibular joint capsulitis, all directly related to the violent motor vehicle accident of February 8, 2007." [Doc. 1-1 at 11] Although Plaintiffs had rejected UM coverage when they purchased their ANPAC policy, they filed the present declaratory judgment action seeking to declare their rejection "void and ineffective" under New Mexico law. [Doc. 1-1 at 13] In support of their complaint, Plaintiffs attached a letter from ANPAC dated August 4, 2010, in which an ANPAC representative agreed to a proposed settlement with the underinsured motorist and stated that he did "not see an Underinsured Motorist Bodily Injury (UIMBI) exposure under Mrs. Downey's ANPAC New Mexico Automobile policy." [Doc. 1-2 at 19] See Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) (noting that the court may consider documents and exhibits attached the complaint, so long as the parties do not dispute the documents' authenticity"). Based on the foregoing, the Court concludes that Plaintiffs had an identifiable specific claim for UM benefits under their ANPAC policy and that there was a disagreement about coverage.

[Doc. 36 at 33-34]

On May 8, 2012, ANPAC filed a *Motion for Reconsideration of Order Denying ANPAC's Motions to Dismiss* [Doc. 39]. In their motion, ANPAC seeks to clarify the

---

[1]The Court granted the *Motion to Dismiss Claims Against Defendant Rossi* [Doc. 13] "because a declaratory judgment with respect to contract reformation will not redress the alleged injuries caused by Rossi." [Doc. 36 at 42] The Court also denied *Plaintiffs' Motion to Remand and Memorandum in Support* [Doc. 15], concluding that the Court had original jurisdiction over Plaintiffs' complaint pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

August 4, 2010 letter relied upon by the Court in its *Memorandum Opinion and Order*. ANPAC contends that "[t]he August 4, 2010 letter that ANPAC sent to Mrs. Downey's attorney did not create an actual controversy over the amount of UIMBI coverage *limits* that Plaintiffs had under their policy post-*Jordan*, which is the crux of this case. Rather, the letter raised a question about the *value* of Mrs. Downey's alleged bodily injury and whether Mrs. Downey had a UIMBI *claim* at all." [Doc. 39 at 4 (emphasis in original)] ANPAC points out that Mrs. Downey had elected $100,000 in UIMBI coverage, $50,000 in excess of the policy limits of the tortfeasor with whom Mrs. Downey had settled. Because additional UIMBI coverage was available, "even without policy reformation under the yet-to-be-decided Jordan case," ANPAC contends that "the dispute reflected in the August 4 letter clearly concerned whether ANPAC had *any* underinsured-motorist exposure due to a disagreement whether the value of Mrs. Downey's injuries exceeded [the tortfeasor's] liability limit of $50,000, not whether additional UIMBI limits were available." [Doc. 39 at 5 (emphasis in original)] ANPAC states that "[t]hose facts had not been addressed in the Motion to Dismiss because ANPAC did not anticipate the Court's misapprehension of the letter." [Doc. 52 at 3] Plaintiffs respond, in relevant part, that the August 4, 2010 letter is ambiguous and, therefore, ANPAC's motion to dismiss should be denied. [Doc. 51 at 4]

**II.     STANDARDS**

*A.     Reconsideration Standard*

5

The Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration. Instead, depending on when the motion is filed, it is treated either as a Rule 59(e) motion to alter or amend the judgment or a Rule 60(b) motion for relief from the judgment. Computerized Thermal Imaging, Inc. v. Bloomberg, L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002). "[I]f filed within 10 days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed more than 10 days after entry of judgment, it is treated as a motion for relief from judgment under Rule 60(b). Id. In this case, because ANPAC filed its motion on May 8, 2012, more than ten days after the Court's *Memorandum Opinion and Order* [Doc. 36] was filed, ANPAC's motion must be treated as one brought pursuant to Rule 60(b). See id.

While a district court enjoys "discretion to grant relief as justice requires under Rule 60(b)," such relief is "extraordinary and may only be granted in exceptional circumstances." Servants of Paraclete v. Does, 204 F.3d 1005, 1009 (10th Cir. 2000) (internal quotation marks omitted).

Rule 60(b) provides as follows:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

>(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
>(4) the judgment is void;
>
>(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
>(6) any other reason that justifies relief.

B.     *Twombly-Iqbal Standard*

Under Fed. R. Civ.P. 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The sufficiency of a complaint is a question of law, and when considering and addressing a motion to dismiss pursuant to rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006). Further, in order to withstand a rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal citation omitted) (Iqbal). If a plaintiff cannot nudge the claims "across the line from conceivable to plausible," the complaint must be dismissed. Id. at 570.

In handing down Twombly, the United States Supreme Court invalidated the longstanding rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Conley standard has proved problematic over the years because it suggests that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46).  As a result, defendants may be forced to bear the burden and expense of discovery before they are afforded a real opportunity to seek the dismissal of groundless claims, while plaintiffs may use the burdensome discovery process as leverage to induce otherwise unjustified settlement of such groundless claims.  See Twombly, 550 U.S. at 557-59.

A complaint is now subject to dismissal under the new standard if it does not "possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).  In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

Two "working principles" underlie the Twombly standard. Iqbal, 129 S.Ct. at 1949.

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Id. at 1949-50 (internal citations omitted). Thus, in order to evaluate a motion to dismiss, the Court engages in a two-part inquiry by initially identifying those allegations that are nothing more than legal conclusions and therefore "not entitled to the assumption of truth" and then considering whether the factual allegations "plausibly suggest an entitlement to relief." Id. at 1951. Accordingly, the Court must begin by evaluating the elements of the pleaded cause of action, in order to determine whether the complaint states sufficient factual allegations to implicate a claim for relief. See id. at 1947.

## III.   DISCUSSION

ANPAC contends that the Court denied its motion to dismiss based on a mistake of fact, namely, its misapprehension of the August 4, 2010 letter. Specifically, ANPAC contends that the Court improperly construed the August 4, 2010 letter as presenting a case or controversy regarding Plaintiffs' UIMBI policy limits, whereas the letter actually presented a case or controversy regarding the extent of Mrs. Downey's damages (i.e., whether these damages exceeded the tortfeasor's liability limits of $50,000). It is well

9

established that "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete, 204 F.3d at 1012.  Because ANPAC's motion for reconsideration alleges that the Court has misapprehended the operative facts, the Court concludes that ANPAC's motion for reconsideration falls within the purview of Rule 60(b).

Plaintiffs contend, however, that ANPAC's motion for reconsideration simply rehashes arguments previously made in ANPAC's motion to dismiss. [Doc. 51 at 3] The Court disagrees.  ANPAC's motion to dismiss did not present any arguments regarding the proper interpretation of the August 4, 2010 letter.  Indeed, the briefing on ANPAC's motion to dismiss does not mention the August 4, 2010 letter or explain its contents at all. Accordingly, Plaintiffs' "rehashing" argument is hereby rejected.

The Court therefore addresses the merits of ANPAC's argument that it misapprehended the contents of the August 4, 2010 letter, which provides as follows:

> Dear Mr. O'Friel:
>
> This file has been assigned to me for handling.  I am in receipt of your letter of July 14, 2010 wherein you requested American National Property And Casualty Company's (ANPAC) permission for your client to settle her claim against the defendants in the above-mentioned case.  You also provided a copy of the Police Report and medical bills and records documenting Mrs. Downey's claim.
>
> After reviewing the same, I agree to comply with your request for ANPAC to consent to the underlying settlement.  Enclosed is a signed copy of the consent form you drafted.
>
> Please note that there are $2,000 in Medical Payments Benefits under Mrs. Downey's ANPAC New Mexico Automobile Policy that are available for

>the reasonable medical expenses she incurred within one year and as a result of the above-captioned loss. Please let me know whether you want me to pay the medical bills you forwarded for my review out of said coverage.
>
>It is my understanding that Farmers insures Mr. Howell and Ms. Howell with a $50,000 per person Bodily Injury Limit of Liability. *Based on the information you have provided documenting your client's claim, I do not see an Underinsured Motorist Bodily Injury (UIMBI) exposure under Mrs. Downey's ANPAC New Mexico Automobile Policy.* However, I certainly will reevaluate my position if you have additional information to submit and/or Farmers tenders their policy limit.
>
>Please feel free to contact me at the number provided below with any questions or concerns.
>
>Sincerely,
>
>Joe Moore, CPCU
>Litigation Specialist
>Litigation/Special Investigation
>American National Property And Casualty Company

[Doc. 1-2 at 19 (Emphasis added)].

It is undisputed that Mrs. Howell, the tortfeasor, was insured by Farmers Insurance Company of Arizona and had $50,000 in per-person bodily injury liability coverage. It is further undisputed that Mrs. Downey had UIMBI coverage under her ANPAC policy, which, even before being reformed by operation of the <u>Jordan</u> decision, had elected limits of $100,000 per person. When the August 4, 2010 letter is construed in light of these undisputed facts, any perceived ambiguity in the August 4, 2010 letter is dissipated. Despite the availability of excess coverage, in the letter, ANPAC states that it does "not see an Underinsured Motorist Bodily Injury (UIMBI) exposure under Mrs. Downey's

ANPAC New Mexico Automobile Policy," but is "willing to reevaluate [this] position if you have additional information to submit and/or Farmers tenders their policy limits." Given that ANPAC was willing to reevaluate its position if Plaintiffs could proffer additional documentation regarding damages or if they received the tortfeasor's policy limits, ANPAC's statement regarding its "UIMBI exposure" plainly refers to the amount of Plaintiffs' damages, rather than the amount of Plaintiffs' UIMBI policy limits. Accordingly, the August 4, 2010 letter fails to support an inference that a case or controversy existed between Plaintiffs and ANPAC regarding the amount of Plaintiffs' UIMBI policy limits, and for this reason, reconsideration is granted.

Turning to the facts alleged in Plaintiffs' *Verified Complaint for Declaratory Relief* [Doc. 1-1], the Court concludes that Plaintiffs' *Complaint* fails to allege facts in support of a case or controversy regarding Plaintiffs' UIMBI policy limits. For example, Plaintiffs fail to allege that they incurred damages in excess of their $100,000 UIMBI policy limits, that they requested additional UIMBI benefits from ANPAC, and that ANPAC denied and/or otherwise failed to handle their claim for additional UIMBI benefits consistent with the dictates of Jordan. The *Verified Complaint* simply alleges, in a conclusory fashion, that "Plaintiffs are 'persons interested' as contemplated by NMSA 1978, §§ 44-6-4 and 44-6-5 and an 'actual controversy' as contemplated by NMSA 1978, § 44-6-2, exists concerning the interpretation of the Plaintiffs' MFRA policy and total limits of UM coverage available to Mrs. Downey as benefits under that policy." [Doc. 1-1 at 13]

Plaintiffs' *Verified Complaint* seeks declaratory relief. However, the Declaratory Judgment Act, 28 U.S.C. § 2201, does not create a substantive right of action. See Mashunkashey v. United States, 131 F.2d 288, 290 (10th Cir. 1942) ("[T]he declaratory judgment act creates no new rights."). "The Act merely provides a procedure empowering a federal court to declare the legal rights and obligations of adversaries engaged in a justiciable controversy." Kunkel v. Continental Cas. Co., 866 F.2d 1269, 1273 (10th Cir. 1989). "In a declaratory action brought in federal court based on diversity of citizenship, state law rather than federal law governs the substantive issues of the underlying coercive action." 12 Moore's Federal Practice § 57.21[3][d] (3d Ed. 2012); see Air Liquide America Corp. v. Continental Cas. Co., 217 F.3d 1272, 1275 (10th Cir. 2000) ("A federal court sitting in diversity applies the substantive law . . . of the forum state.") (internal quotation marks and citation omitted).

Turning to the allegations in Plaintiffs' *Verified Complaint*, as previously explained, Plaintiffs fail to allege that their damages exceeded their $100,000 UIMBI policy limits and that ANPAC denied their request for additional UIMBI benefits in violation of Jordan. However, Plaintiffs' *Verified Complaint* does allege that their rejection of equal limits UIMBI coverage was "void and ineffective" under New Mexico law and that ANPAC's use of the UIMBI sales form violated the New Mexico Insurance Trade Practices Frauds Act, NMSA, §§ 59A-16-3 and 59-15-4. [Doc. 1-1 at 12-13]

The purpose of the Trade Practices and Fraud Article (Article 16) of the Insurance Code is "to regulate trade practices in the insurance business." NMSA 1978, § 59A–16–2.

13

Pursuant to section 59A-16-3, "[n]o person shall engage in this state in any practice which in this article is defined or prohibited as, or determined to be, an unfair method of competition, or unfair and deceptive act or practice, or fraudulent." The Act provides that "[a]ny person covered by Chapter 59A, Article 16 NMSA 1978 who has *suffered damages* as a result of a violation of that article by an insurer or agent is granted a right to bring an action in district court to recover *actual damages* " § 59A-16-30 (emphasis added).

Plaintiffs' *Verified Complaint* fails to allege facts plausibly suggesting that ANPAC's use of the UIMBI sales form violated any of the provisions enumerated in Article 16 of the Insurance Code. See, e.g., NMSA 1978, § 59A-16-20 (defining unfair and deceptive practices). Furthermore, Plaintiffs' *Verified Complaint* fails to allege facts plausibly suggesting that Plaintiffs suffered any "actual damages" as a consequence of ANPAC's use of the UIMBI sales form. See Dydek v. Dydek, 288 P.3d 872, 885 (N.M. App. 2012) ("Section 59A–16–30 allows successful plaintiffs 'to recover actual damages.'"). Although the UIMBI sales form may have prevented Plaintiffs from "making an informed and intelligent decision about whether to exercise their right to purchase higher UM limits at the same time they were purchasing higher MFRA limits under their ANPAC policy," there are no facts to suggest that Plaintiffs suffered any actual damages as a result. [Doc. 1-1 at 12] Because the *Verified Complaint* fails to state a claim upon which relief can be granted under Section 59A-16-30, the Court will grant ANPAC's motion to dismiss.

The Court recognizes that Plaintiffs' *Verified Complaint* originally was filed in New Mexico state court, which does not employ the heightened Twombly-Iqbal pleading standard. See Madrid v. Village of Chama, 283 P.3d 871, 876 (N.M. App. 2012) (declining to "incorporate the new federal standard into our state rules"). The Court further recognizes that a significant amount of discovery has been conducted while ANPAC's motion for reconsideration was pending. [See Doc. 82] Based on the foregoing, the Court exercises its discretion to permit Plaintiffs an opportunity to allege additional facts in support of their *Verified Complaint*. Accordingly, the Court will permit Plaintiffs leave to file a motion to amend the complaint no later than fourteen days from the date of this *Memorandum Opinion and Order*. A proposed amended complaint must be attached to the motion to amend as required as D.N.M.-LR-Civ. 15.1. ANPAC will be permitted an opportunity to respond to the motion to amend the complaint in accordance with D.N.M.-LR-Civ. 7. In deciding whether to permit an amendment to the complaint, the Court must be satisfied that the filing of an amended complaint would not be futile. See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1288 (10th Cir. 2008) ("The district court is not required to grant leave to amend, however, if amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.") (internal quotation marks and citation omitted)).

**IT IS THEREFORE HEREBY ORDERED** that *Defendants' Motion for Reconsideration of Order Denying ANPAC's Motion to Dismiss* is **GRANTED** and

15

ANPAC's *Motion to Dismiss Plaintiffs' Claims Against Defendants American National Property and Casualty Company and American National General Insurance Company* is **GRANTED**.

    **IT IS FURTHER ORDERED** that Plaintiffs' *Verified Complaint for Declaratory Relief* is **DISMISSED WITHOUT PREJUDICE**.

    **IT IS FURTHER ORDERED** that Plaintiffs are granted leave to file a motion to amend the *Verified Complaint* within fourteen days of the date of this *Memorandum Opinion and Order*.

    **SO ORDERED** this 28th day of March, 2013 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge